Michael J. Keenan (S.B. No: 003425
WARD, KEENAN & BARRETT, P.C.
3838 N. Central Avenue
Suite 1720
Phoenix, AZ 85012
Tel: 602-279-1717
Fax: 602-279-8908
Email: mkeenan@wardkeenanbarrett.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 428, a Labor Organization, | Case No.: |
| | COMPLAINT |
| Plaintiff, | |
| vs. | |
| ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., ARIZONA CHAPTER, a corporation; AMES CONSTRUCTION, INC., a corporation; BRAGG COMPANIES dba BRAGG CRANE SERVICE, a corporation; CRANE RENTAL SERVICE, INC., a corporation; HKB, INC. dba SOUTHWEST INDUSTRIAL RIGGING, a corporation; KLONDYKE CONSTRUCTION, LLC., an Arizona limited liability company; KIEWIT WESTERN CO., a corporation; MARCO CRANE AND RIGGING CO., a corporation;  PULICE CONSTRUCTION, INC., a corporation; and ROYDEN CONSTRUCTION CO., a corporation, | |
| Defendants. | |

For its complaint against defendants, plaintiff alleges as follows:

1.     This is an action to enforce an arbitration award arising out of collective bargaining agreements among plaintiff and defendants.  Jurisdiction is conferred upon

1

this court pursuant to Section 301(a) of the Labor Management Relations Act, as Amended ("LMRA"), 29 USC § 185 and 28 USC § 1331.

2.      Plaintiff, International Union of Operating Engineers Local 428 ("the Union") is an unincorporated labor organization which serves as the collective bargaining representative of employees of the defendants covered under collective bargaining agreements.  The Union is a labor organization within the definition of The LMRA. 29 USC § 152(4).

3.      Defendant Association General Contractors of America, Inc., Arizona Chapter, ("AGC") is corporation which serves as the collective bargaining representative for defendants.  The AGC negotiated the collective bargaining agreements and represented defendants in connection with the arbitration case which is the subject of this complaint.  AGC is an employer engage in interstate commerce within the meaning of the LMRA. 29 USC §152(2), (6) and (7).

4.      Ames Construction, Inc. ("Ames") is a corporation authorized to do business in the state of Arizona and it maintains an office in Maricopa County where it engages in business as a contractor in the construction industry.  Ames is bound by the collective bargaining agreement between the Union and AGC. Ames is an employer engaged in interstate commerce within the meaning of the LMRA.

5.      Defendant Crane Rental Service, Inc. (Crane Rental") is a corporation authorized to do business in Arizona.  Crane Rental Service, Inc. is in the business of renting and operating heavy construction equipment.  Crane Rental Service is bound by the collective bargaining agreement between the Union and the AGC and it has authorized the AGC to act as its bargaining representative in negotiations and in connection with the arbitration.

6.      Bragg Companies, dba Bragg Crane Service ("Bragg") is a corporation authorized to do business in Arizona.  Bragg Crane Service is in the business of renting and operating heavy construction equipment.  Bragg Crane Service is bound by the collective bargaining agreement between the Union and the AGC and it has authorized

the AGC to act as its bargaining representative in negotiations and in connection with the arbitration.

7.    HKB, Inc. dba Southwest Industrial Rigging ("Southwest") is a corporation authorized to do business in Arizona.  It maintains its principal place of business in Maricopa County, Arizona.  Southwest is bound by the collective bargaining agreement between the Union and the AGC and it has authorized the AGC to act as its bargaining representative in negotiations and in connection with the arbitration.

8.    Klondyke Construction, Inc. ("Klondyke") is an Arizona limited liability company which maintains its principal place of business in Maricopa County, Arizona.  Klondike is a construction contractor bound to the terms of the agreement between the Union and the AGC and it has authorized the AGC to act as its bargaining representative in negotiations and in connection with the arbitration.

9.    Pulice Construction, Inc. ("Pulice") is a corporation authorized to do business in Arizona.  Pulice maintains an office and place of business in Maricopa County, Arizona, where it performs work as a construction contractor.  Pulice is a construction contractor bound to the terms of the agreement between the Union and the AGC and it has authorized the AGC to act as its bargaining representative in negotiations and in connection with the arbitration.

10.    Marco Crane and Rigging Co. ("Marco") is an Arizona corporation authorized to do business in Arizona.  Marco maintains an office and place of business in Maricopa County, Arizona, where it is engaged in the business of renting and operating heavy construction equipment.  Marco is bound to the terms of the agreement between the Union and the AGC and it has authorized the AGC to act as its bargaining representative in negotiations and in connection with the arbitration.

11.    Kiewit Western Co. ("Kiewit") is a corporation authorized to do business in Arizona.  It maintains an office and operations in Maricopa County, Arizona, where it engages in business as a construction contractor.   Kiewit is bound to the terms of the

agreement between the Union and the AGC and it has authorized the AGC to act as its bargaining representative in negotiations and in connection with the arbitration.

12.     Royden Construction Co. (Royden") is an Arizona corporation authorized to do business in Arizona.  It maintains an office and operations in Maricopa County, Arizona, where it engages in business as a construction contractor.   Royden is bound to the terms of the agreement between the Union and the AGC and it has authorized the AGC to act as its bargaining representative in negotiations and in connection with the arbitration.

13.     The Union and defendants have been party to a series of collective bargaining agreements which provide for the wages, hours and working conditions of employees performing work as heavy equipment operators, mechanics, crane operators, and apprentices.  The collective bargaining agreements, hereinafter collectively referred to as the "AGC Agreement," under which the arbitration award arose had as their  term the period June 16, 2008 through May 31, 2011.

14.     The AGC Agreement provides a procedure for resolution of disputes and grievances. If the parties are unable to resolve their differences in the early steps of the grievance procedure, either party may submit the dispute to final and binding arbitration. A true and correct copy of Article 9 of the AGC Agreement, which contains the grievance procedures is attached as Exhibit A.

15.     The AGC Agreement also provides for various levels of wages and fringe benefits which are payable to or on behalf of employees performing work covered under the agreement.  Wage and benefit contribution increases were scheduled to go into effect on June 1, 2009 and June 1, 2010, respectively.  Copies of the applicable provisions of the AGC Agreement which relate to wage and benefit schedules are attached as Exhibit B.

16.     By letter dated May 29, 2009, defendant Pulice notified the Union that it was "delaying all wage adjustments scheduled to take effect June 1, 2009, until we can collectively re-evaluate the present market conditions."

17.     By letter dated June 3, 2009, defendant AGC notified the Union that the contractors who assigned their bargaining rights to the AGC (defendants named herein) were invoking Article 104.1 "Other Contractors' Rates" of the collective bargaining agreement and that the contractors would not pay the wage and benefit increases scheduled to take effect on June 1, 2009.

18.     Defendants contended that the Union had violated Article 104.1 by allowing other contractors to pay less favorable wages and benefits than those provided for under the AGC Agreement.

19.     On June 18, 2009, the Union filed a grievance against the AGC and the defendant contractors contending that they violated the contract by unilaterally refusing to implement the wage and benefit increases due June 1, 2009.

20.     The parties were not able to resolve their grievances in the early stages of the grievance procedure. Pursuant to Article 9 of AGC Agreement, the dispute was advanced to arbitration.

21.     The parties selected arbitrator George E. Marshall, Jr. to conduct the arbitration hearing.  The hearing was held on February 16, 2010.

22.     No transcript or other record of the arbitration hearing was created.  The record made at the arbitration hearing consisted of a stipulated statement of facts, exhibits, issue statements, witness testimony and post-hearing briefs submitted by the parties.

23.     On July 9, 2010, arbitration Marshall issued his Arbitration Award and Opinion, a true and correct copy of which is attached as Exhibit C. He found that the AGC and the defendant contractors named herein had violated the collective bargaining agreement by unilaterally refusing to implement wage and benefit increases.  He ordered the AGC and its member companies, including crane rental companies "to pay, retroactively, the wage and benefit increases due June 1, 2009 and June 1, 2010, …" The arbitrator further ordered that all wages and benefits be paid within 30 days after receipt of the opinion.

24.     The Union has made demands upon defendants to pay the wages and benefits due, but defendants have failed and refused to do so.

25.     Over the course of the past several months, efforts have been made to settle this dispute, but those efforts have been unsuccessful.

26.     To date, defendants have refused to implement the arbitration award and to pay the amounts due as directed by the arbitrator.

27.     The arbitrator's award draws its essence from the collective bargaining agreement, it represents a plausible interpretation of the contract and the arbitrator considered and resolved all issues and arguments based upon specific language of the collective bargaining agreement, negotiating history, past practice and "industrial common law", all of which have been recognized as appropriate tools for resolving disputes arising out of collective bargaining agreements.

28.     Given the narrow scope of judicial review for arbitration awards, the award should be enforced in its entirety, defendants' current and former employees should be provided with the wages and benefit contributions due them, and the court should award interest at the lawful rate from  August 8.2010 to the present because of defendants' failure to make required payments within the time mandated by the arbitrator.

29.     Attorneys' fees should be award under the applicable standard in the 9th Circuit:  Where an employer refuses to abide by the award of an arbitrator "bad faith may be demonstrated by showing that a defendant's obstinacy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation." *International Union of Petroleum Works v. Western Industrial Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir. 1983).

Wherefore, for all of the foregoing reasons, the Court is respectfully requested to enter judgment in favor of plaintiff as follows:

1.     Enforcing the arbitration award in its entirety, including the payment to all affected employees of wage and benefit increases due on June 1, 2009 and June 1, 2010 respectfully.

2.     Award the Union its cost of suit incurred herein.

3.     Award the Union its reasonable attorneys' fees.

4.     For pre- and post- judgment interest at the lawful rate.

5.     For such other and further relief as may be appropriate under the circumstances.

Dated this 28th day of September, 2012.

Michael J. Keenan (S.B. No: 003425
WARD, KEENAN & BARRETT, P.C.
3838 N. Central Avenue
Suite 1720
Phoenix, AZ 85012
Tel: 602-279-1717
Fax: 602-279-8908
Email: mkeenan@wardkeenanbarrett.com
Attorneys for Plaintiffs

# EXHIBIT A

# ARTICLES OF AGREEMENT

BETWEEN

## THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 428



Local 428

AND

## THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA INC. ARIZONA CHAPTER



*Building Arizona Since 1934*

TERM OF AGREEMENT: JUNE 16, 2008 TO MAY 31, 2011

® 26

# ARTICLE 9
## PROCEDURE FOR SETTLING DISPUTES AND GRIEVANCES

901 -      Contractual Disputes

A grievance shall be defined to mean any dispute, controversy or disagreement as to the application in or interpretation of any of the terms and provisions set forth in this Agreement.

Step 1 -    Any employee having a grievance shall, by himself or herself, or with the aid of a Union Representative, first take up the grievance with the Company, or its designated representative who shall attempt to adjust it.  The grievance shall be submitted in writing as promptly as possible, and in no case in excess of ten (10) working days from the date of occurrence of the incident which led to the grievance.  At this step the grievance shall be submitted in writing and contain details of the nature of the grievance and the Articles of the Agreement allegedly violated.  The Company shall render its decision within two (2) working days after being presented with the grievance.

Step 2 -    If the grievance remains unsettled, an authorized Union Representative shall be called in by the Union within two (2) working days after the decision of the Company.  All time limits hereinafter may be extended by mutual consent.  Participants in this step shall be the Union Representative and a Company Representative who shall have two (2) working days in which to settle the grievance.

Step 3 -    If the grievance remains unsettled, within fifteen (15) calendar days the parties shall engage in non-binding mediation.  The mediator will be one of the commissioners from the Arizona office of the Federal Mediation and Conciliation Service.

Step 4 -    If no settlement or agreement is reached in Step 3, then within five (5) working days of the Step 3 meeting, the matter may be referred to arbitration.  A request for arbitration shall be presented to the Company in writing and shall contain a complete outline of the nature of the complaint.  Within ten (10) working days of receipt of a request for arbitration, the parties shall:

1. Meet to mutually select an arbitrator.
2. If unable to select an arbitrator at the meeting, then the moving party shall, within five (5) working days, request a panel of seven (7) arbitrators from the Federal Mediation and Conciliation Service.
3. Upon receipt of the panel of seven (7) arbitrators, each party shall strike three (3) names alternately with the remaining arbitrator authorized to hear the case.

No grievance shall be submitted to arbitration under Step 4 unless the time limits in Steps 1 and 2 have been complied with; any grievance submitted after the time limits have expired shall be forfeited and waived.

The arbitrator may not change, modify or alter any of the terms and provisions of the Agreement.  The findings of the arbitrator shall be rendered within thirty (30) days of the date of hearing and shall be binding and enforceable on all parties.

The expenses of the arbitrator and the hearing room shall be borne equally by both parties.

It is the intention of the parties that this Article shall provide a peaceful method of adjusting grievances and there shall be no suspension or interruption of normal operations as a result of any grievances.

All jurisdictional disputes shall be determined in the manner and by the procedure established by the International Disputes Settlement Plan between the International Union of Operating Engineers, the International Brotherhood of Teamsters and Laborers International Union.

7

**SIGNATURE PAGE**

This Agreement, signed as of the day and year written below:

Signed this _17_ day of _September_, 2008

FOR THE UNION

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL NO. 428, AFL-CIO

BY: _____
 Gary Teel, Business Manager

BY: _____
 Raul Garcia, President

FOR THE ARIZONA CHAPTER ASSOCIATED GENERAL CONTRACTORS

BY: _____
 David M. Martin, President

28

# EXHIBIT B

## ARTICLE 10
## EMPLOYEE TERMINATION

1001 -     No Discrimination.  The Employer may discharge any employee for any cause which he may deem sufficient, provided there shall be no discrimination on the part of the Employer against any employee nor shall any such employee be discharged by reason of any union activity not interfering with the performance of his work, nor because of race, creed, national origin, age, or sex. (For rules governing discharge of job steward, see Article 16.)

1002 -     Reference to Gender.  All reference to employees in this Agreement designate both sexes and whenever the male gender is used, it shall be construed to include both male and female employees if applicable.

1003 -     Termination Slips.  The contractor shall furnish and complete termination slips for any employee who is terminated, showing the reason therefore, giving one (1) copy to the employee, returning one (1) copy to the dispatching hall at the time of termination, and retaining one (1) copy for the company's records.  In those instances where a termination notice is marked "NOT FOR REHIRE", that employee shall not be re-referred by the same dispatching hall to the Employer, or the same job or project, within one (1) year of such termination date (unless called by name).  In the event the Employer does not comply with this paragraph, the employee shall be considered eligible for rehire.

1004 -     If an employer is delinquent in the payment of benefits to the Operating Engineers Local 428 trust funds, the employees working under this agreement can request and be granted a reduction in force from the delinquent contractor.

## ARTICLE 11
## INSURANCE, TAXES AND PAYROLL RECORDS

1101 -     Insurance and Taxes.  The Employer shall carry insurance, and pay appropriate taxes, as required by federal, state and local laws and/or regulations.

1102 -     Payroll Records.  The Employer agrees that each employee shall be given, with each check, a detachable statement showing the employee's name or identification number, straight time hours worked, overtime hours worked, payroll period covered, gross amount earned, social security tax, withholding tax and other deductions itemized.  Employers found to have maintained incorrect payroll records for the purpose of avoiding proper wage payments, shall be considered in gross violation of the Agreement.

1103 -     Employers name or logo should be shown on check stubs.

## ARTICLE 12
## HEALTH AND WELFARE

1201 -     Amounts.  Effective on the dates listed below, and monthly in accordance with the provisions of the trust agreement, the Employer bound to the collective bargaining agreement shall pay the sum indicated for each hour worked by employees covered under the provisions of this Agreement to the trustees of the Operating Engineers Local No. 428 Health and Welfare Trust Fund:

June 16, 2008 - $5.00
June 1, 2009 - $5.10
June 1, 2010 - $5.20

8

1201.1 -   If additional monetary increases are deemed necessary, they will be designated by the Union as to dates and amounts, and will be taken from negotiated settlements.  The Union can revise the economic package so long as the combined total of wages, health and welfare, pension, vacation savings and apprenticeship does not exceed the economic package figure.  It is agreed that the Union will give the Company sixty (60) days advance notice, in writing, of proposed changes to the contribution rate.

1202 -   Employer's Obligations.   The said payments by the Employer shall discharge his obligation hereunder.  Any dispute arising in the administration of said fund shall not be deemed to be a dispute hereunder and shall not be a subject matter of the grievance procedures contained in Article 9 hereof and shall not be deemed to be a dispute concerning wages, hours, and working conditions, except as specifically provided in Article 9.

1203 -   Declaration of Trust.  The parties shall cause the said trustees to execute any and all document necessary and required to continue in full force and effect the Agreement and Declaration of Trust dated the 29th day of September, 1959, as amended thereafter, creating the said Operating Engineers Local No. 428 Health and Welfare Trust Fund, for the duration and term of this collective bargaining Agreement.  A copy of the Agreement and Declaration of Trust dated the 29th day of September, 1959, as amended is incorporated herein by reference.  The Board of Trustees, as appointed, shall have equal voice in making all decisions concerning the Trust, including amendments of the Trust plan itself.

1204 -   The Employer signatory hereto agrees to the appointment, as his representatives, the trustees designated pursuant to the Agreement and Declaration of Trust of the Operating Engineers Local No. 428 Health and Welfare Trust Fund as Employer representatives and further agrees that they shall be bound by all the terms and conditions of said Agreement and Declaration of Trust dated September 29, 1959, and as amended thereafter, and to all amendments thereto during the term hereof.

## ARTICLE 13
## PENSION

1301 -   Amounts.  Effective on the dates listed below, and monthly in accordance with the provisions of the Trust Agreement, the Employers shall pay the sum indicated below for each hour worked by employees covered under the provisions of this Agreement to the Trustees of the Operating Engineers Local No. 428 Pension Trust Fund:

June 16, 2008 - $3.55
June 1, 2009 - $3.92
June 1, 2010 - $4.30

1301.1 -  If additional monetary increases are deemed necessary, they will be designated by the Union as to rates and amounts, and will be taken from the negotiated settlement.  The Union can revise the economic package so long as the combined total of wages, health and welfare, pension, vacation saving and apprenticeship does not exceed the economic package figure.  It is agreed that the Union will give the Company sixty (60) days advance notice, in writing, of proposed changes to the contribution rate.

1302 -   Employer's Obligations.

1302.1 -  The said payment by the Employer shall discharge his obligation hereunder.  Any dispute arising in the administration of said fund shall not be deemed to be a dispute hereunder and shall not be the subject matter of the grievance procedures contained in Article 9, hereof, and shall not be deemed to be a dispute concerning wages, hours or working conditions.

9

1303 -   Declaration of Trust.  The parties shall cause the said Trustees to execute any and all documents necessary and required to continue in full force and effect the Agreement and Declaration of Trust dated the 25th day of January, 1963, and as amended thereafter, creating the said Operating Engineers Local No. 428 Pension Trust Fund for the duration and the term of this collective bargaining agreement.  A copy of the Agreement and Declaration of Trust dated the 25th day of January, 1963, and as amended thereafter, is incorporated herein by reference.  The Board of Trustees, as appointed, shall have equal voice in making all decisions concerning the Trust, including amendments of the Trust Plan itself.

1304 -   The Employer signatory hereto agrees to the appointment as his representative the Trustees designated pursuant to the Agreement and Declaration of Trust of the Operating Engineers Local No. 428 Pension Trust Fund as Employer representatives and further agrees that they shall be bound by all the terms and conditions of said Agreement, and Declaration of Trust dated January 25, 1963, and as amended thereafter, and to all amendments thereto during the term hereof.

# ARTICLE 14
## APPRENTICESHIP AND TRAINING

1401 -   Programs.  The individual Employer and the Union recognize the need for apprentices and journeyman training and retraining, and to this end the apprentices employed shall be in conformity with the provisions of the Arizona Apprenticeship Council standards.

1402 -   State Board of Directors.

1402.1 -  In order that there may be a continuing activity in promotion of the Operating Engineers Apprenticeship and Training System, a Board of Directors for this system in the building, heavy-highway and engineering construction and related industries has been established.  The principal function of this Board of Directors is to administer the Apprenticeship System and Standards which have been adopted by the Associated General Contractors, Arizona Chapter, and Local Union No. 428, International Union of Operating Engineers for the State of Arizona, identified as Operating Engineers Joint Apprenticeship and Training System.

1402.2 -  The State Board of Directors shall be composed of eight (8) members, four (4) of whom shall be appointed by the Associated General Contractors, Arizona Chapter, and shall represent the individual Employers, and four (4) of whom shall be appointed by Local Union No. 428, International Union of Operating Engineers, and shall represent the Union, who shall serve staggered terms as specified in Section II of the Standards of the Operating Engineers Joint Apprenticeship and Training System.

1403 -   Amounts.  There has been established a fund known as Arizona Operating Engineers Joint Apprenticeship and Training Fund, the purpose of which shall be to pay for the administration of the system.  Effective June 16, 2008 the Employer shall make a contribution in the amount of twenty-nine cents ($.29) per hour for each hour worked by each employee covered by the terms of this Agreement and employed by said Employer, to the Joint Apprenticeship and Training Fund, which will be received and administered by the State Board of Directors.  This contribution shall be made on or before the fifteenth (15th) day of each month for the proceeding month and continued for each month thereafter, until the expiration of this Agreement.

1403.1 -  If additional monetary increases are deemed necessary, they will be designated by the Union as to dates and amounts, and will be taken from negotiated settlements.  The Union can revise the economic package so long as the combined total of wages, health and welfare, pension, vacation savings and apprenticeship does not exceed the economic package figure.  It is agreed that the Union will give the Company sixty (60) days advance notice, in writing, of proposed changes to the contribution rate.

10

1404 -    The Employer signatory hereto agrees to the appointment as their representatives, the Directors designated pursuant to the Agreement and Declaration of Trust of the Operating Engineers Local No. 428 Apprenticeship and Training Fund as Employer representatives and further agree that he shall be bound by all the terms and conditions of said Apprenticeship Standards and Fund and all amendments thereto during the term thereof.

1405 -    Apprentices.

1405.1 -    Apprentices shall be paid in accordance with the appropriate progression rate for their indenture.   On apprentices indentured after October 1, 1982, only health and welfare and apprenticeship contributions will be due on 1st and 2nd period apprentices; 3rd and later period apprentices will receive full benefits.

1406 -    Ratios.  On the basis of company work force (not on a job by job basis) thirty percent (30%) of the employees represented by the Union may be apprentices.  It shall be compulsory for the Employer who employs eight (8) or more journeymen covered by this Agreement to employ a minimum of one (1) apprentice.

## ARTICLE 15
## VACATION SAVINGS FUND

1501 -    Amounts.  Effective July 19, 1999, Employers shall pay the sum of fifty cents ($.50) per hour for each hour worked by employees covered hereunder to the Trustees of the Vacation-Savings Trust Fund.  The amount of fifty cents ($.50) is incorporated into the wage rates set forth herein. The fifty cents ($.50) per hour contribution should be deducted from the employee's pay, due after all applicable taxes have been withheld, and forwarded in the manner established by the signatory parties hereto.

1502 –    Employers' Obligations.   The said payment of the Employer shall discharge his obligation hereunder.  Any dispute arising in the administration of said fund shall not be deemed to be a dispute hereunder and shall not be the subject matter of the grievance procedures contained in Article 9 hereof and shall not be deemed to be a dispute concerning wages, hours and working conditions.

1502.1 -    Payments shall be made to the trustees monthly or in such other manner set forth in the trust agreement administering the said Trust.

1503 -    Declaration of Trust.  The parties shall cause the said trustees to execute any and all documents necessary and required to continue in full force and effect the Agreement and Declaration of Trust dated the 24th of May, 1971, and as amended thereafter, creating the said Operating Engineers Local No. 428 Vacation Savings Trust Fund, for the duration and term of this collective bargaining agreement.  A copy of the Agreement and Declaration of Trust dated the 24th day of May, 1971, as amended, is incorporated herein by reference.  The Board of Trustees, as appointed, shall have equal voice in making all decisions concerning the Trust, including amendments of the Trust Plan itself.

1504 -    The Employer signatory hereto agrees to the appointment as his representatives, the Trustees designated by the contractor association as Employer representatives, and further agrees that he shall be bound by all terms and conditions of said Trust Agreement and to all amendments thereto during the term hereof.

11

1705 -    Compressors, Pumps and Welding Machines.  The operation, servicing and maintenance of compressors, pumps and welding machines is recognized as within the jurisdiction of the Operating Engineers' Union.  When an operator is used, he shall be an Operating Engineer operator and subject to all of the terms and conditions of this Agreement.

1706 -    Oilers. Oilers are recognized as within the jurisdiction of the Operating Engineers. Whenever a second man is needed to perform the duties of an oiler or grade checker, he shall be an Operating Engineer and subject to the terms and conditions of this Agreement.

1707 -    Oilers/Drivers.  Oilers/Drivers shall be required on all truck mounted excavating equipment or hoisting equipment over 35 ton MRC having the configuration for two men.

1708 -    Oiler/Drivers and/or Oilers may be called off their regular assignments to perform other work in the immediate vicinity of the crew they are assigned to.  Such other assignments shall not interfere with the performance of their duties as an oiler or oiler/driver.  Such assignment shall be limited to Group 1 and 2.

1709 -    When a workman or workmen are required to work without an intervening rest period of at least eight (8) consecutive hours, said workman or workmen shall be paid the applicable overtime rate until such time as they are relieved from all duties for a period of not less than eight (8) hours.

1710 -    The Employer shall be responsible for overweight, overheight and defective equipment citations, unless the employee has acted contrary to the instruction of the Employer, and the Employer shall pay all fines levied for such violations or citations.

            If the Employer fails to pay said fines, and the employee is detained, arrested and/or incarcerated because of said failure, the employee shall receive his/her regular rate of pay for every hour detained and the applicable overtime rate until released from custody.

            The Employer is not responsible for any fines or for arrest or incarceration for failure to pay said fines if those fines were levied as a result of violations not the responsibility of the Employer.

1711 -    Survey work may be assigned by the contractor to any craft or any management employees solely at the contractor's discretion.  A composite crew is acceptable.


## ARTICLE 18
## OPERATING ENGINEERS WAGE RATES AND CLASSIFICATIONS

Effective June 1, 1999, vacation savings pay in the amount of fifty cents ($.50) for each hour paid for is to be deducted from the employee's check after Social Security, state and federal taxes are deducted and remitted in compliance with this agreement.

## <u>CLASSIFICATIONS</u>                                                                    <u>WAGE RATES</u>

### GROUP 1

|  | Effective 06/16/08 | Effective 06/01/09 | Effective 06/01/10 |
|---|---|---|---|
| Statewide Rate | $19.89 | $20.89 | $21.95 |

A-Frame Boom Truck
Air Compressor Operator
Beltcrete Operator

| CLASSIFICATIONS | WAGE RATES |
|---|---|

**GROUP 1 (CONT'D)**

Boring Bridge and Texture
Brakeman
Concrete Mixer Operator (skip type)
Conductor
Conveyor Operator
Cross Tineing and Pipe Float
Curing Machine Operator
Dinky Operator (under 20 tons)
Elevator Hoist Operator (Husky & similar)
Fireman (all)
Forklift & Ross Carrier Operator
Generator Operator (all)
Handler
Highline Cableway Signalman
Hydrographic Mulcher
Hydrographic Seeder
Joint Inserter
Jumbo Finishing Machine
Kolman Belt Loader Operator
Machine Conveyor Operator
Multiple Power Concrete Saw Operator
Oiler
Pavement Breaker
Power Grizzly Operator
Power Sweeper
Pressure Grout Machine Operator (as used in heavy engineering construction)
Pump Operator
Roller Operator (except as otherwise classified)
Self-Propelled Chip Spreading Machine
Skiploader (3 c.y. & less)
Slurry Seal Machine Operator (moto-paver driver)
Small Self-Propelled Compactor (with blade)-backfill, ditch operation
Straw Blower
Tripper Operator
Tugger Operator
Welding Machine Operator
Wheel-Type Tractor Operator (Ford-Ferguson type with attachments, etc.)
Winch Truck

**GROUP 2**

| | Effective 06/16/08 | Effective 06/01/09 | Effective 06/01/10 |
|---|---|---|---|
| Statewide Rate | $23.16 | $24.16 | $25.22 |

Aggregate Plant Operator (including crushing, screening and sand plants, etc.)
Asphalt Laydown Machine Operator
Asphalt Plant Mixer Operator
Backhoe Operator (Rubber Tire or Track less than 1 c.y.)
Bee Gee Operator
Boring Machine Operator
Concrete Pump Operator

16

| CLASSIFICATIONS | WAGE RATES |
|---|---|

**GROUP 2 (CONT'D)**

Concrete Mechanical Tamping Spreading or Finishing Machine Operator (including Clary, Johnson
       or similar types)
Concrete Batch Plant operator (all types and sizes)
Concrete Mixer Operator (paving type and mobile mixers)
Crane Operator (crawler and pneumatic less than 15 tons capacity MRC)
Drilling Machine Operator (including water wells)
Elevating Grader Operator (all types and sizes, except as otherwise classified)
Electrician Ground Man (assisting lineman electrician)
Field Equipment Serviceman
Locomotive Engineer (including Dinky 20 tons weight and over)
Moto-Paver (and similar type equipment) Operator
Motor Grader Operator (any type power blade-rough)
Oiler Driver
Operating Engineer Rigger
Pneumatic Tired Scraper Operator (all sizes and types)
Power Jumbo Form Setter Operator
Road Oil Mixing Machine Operator
Roller Operator (on all types asphalt pavement)
Screed Operator
Self-Propelled Compactor (with blade) (815, 825 or equivalent – grade operation)
Skip Loader Operator (all types with a rated capacity over 3 but less than 6 c.y.)
Slip Form Operator (power driven lifting device for concrete forms)
Soil Cement Road Mixing Machine Operator (single pass type)
Stationary Pipe-Wrapping & Cleaning Machine Operator
Surface Heater and Planer Operator
Tractor Operator (dozer, pusher-all)
Traveling Pipe-Wrapping Machine Operator
Trenching Machine Operator
Tugger Operator (two or more drums)

| CLASSIFICATIONS | WAGE RATES |
|---|---|

**GROUP 3**

| | Effective 06/16/08 | Effective 06/01/09 | Effective 06/01/10 |
|---|---|---|---|
| State Wide Rate | $24.24 | $25.24 | $26.30 |

Auto Grade Machine Operator (CMI and similar equipment)
Barge Operator
Boring Machine Operator (including Mole, Badger, Horizontal Boring or Directional Boring
       Operators – *only one operating engineer shall be required for each horizontal*
       *or directional boring machine unless additional seated operating stations are*
       *incorporated on the machine by the original equipment manufacturer (OEM)).*
Concrete Pump Operator (truck mounted, with boom attached)
Crane Operator (crawler and pneumatic over 15 tons & less than 100 ton capacity MRC)
Crawler-Type Tractor Operator (with boom attachment and slope bar)
Derrick Operator
Gradall Operator
Grade Checker (excluding Civil Engineer)
Heavy Duty Mechanic/Welder
Helicopter Hoist Operator or Pilot

17

| CLASSIFICATIONS | WAGE RATES |
|---|---|

**GROUP 3 (CONT'D)**

Highline Cableway Operator
Mass Excavator Operator (150 Bucyrus, Erie and similar type)
Mechanical Hoist Operator (two or more drums)
Motor Grader Operator (any type power blade-finish)
Mucking Machine Operator
Overhead Crane Operator
Piledriver Engineer (portable, stationary or skid)
Power Driven Ditch Lining or Ditch Trimming Machine Operator
Remote Control Earth Moving Machine Operator
Rotomill and Milling Machine Operator (asphalt or concrete planing)
Skip Loader Operator (all types with rated capacity 6 c.y. but less than 10 c.y.)
Slip Form Paving Machine Operator (including Gunnert, Zimmerman and similar types)
Tech Engineer (Survey Instrument Man)
Tower Crane (or similar type)
Universal Equipment Operator (shovel, backhoe, dragline, clamshell, etc. up to 10 c.y.)

**GROUP 4**

|  | Effective 06/16/08 | Effective 06/01/09 | Effective 06/01/10 |
|---|---|---|---|
| State Wide Rate | $25.27 | $26.27 | $27.33 |

Crane Operator (pneumatic or crawler – 100 ton hoisting capacity and over MRC rating)
Operating Engineer Electrician (including lineman, tower erector, cable splicer, etc.)
Skip Loader Operator (all types with rated capacity of 10 c.y. or more)
Survey Party Chief
Universal Equipment Operator (shovel, backhoe, dragline, clamshell, etc., 10 c.y. and over)

| Special: | Effective 06/16/08 | Effective 06/01/09 | Effective 06/01/10 |
|---|---|---|---|
| State Wide Rate | $15.00 | $15.50 | $16.00 |

Electrical Helper
Field Equipment Service Helper
Heavy Duty Repair Helper
Heavy Duty Welder Helper

Multiple-unit earth equipment (Holland Loader, etc.), tractor operator, pneumatic-tired or track type, two units ($.50) per hour more than the base unit rate established above and $1.00 per hour for each additional unit.

Engineer Craft Foreman – Not less than ($.50) per hour more than the highest paid operator under his supervision.

Engineer General Foreman – Not less than ($.50) per hour more than the highest paid foreman under his supervision.

All operators, oilers and motor crane drivers on equipment with booms, except concrete pumping truck booms, including jibs, shall receive one cent ($.01) per foot per hour pay for every foot over eighty (80) feet in addition to his regular rate of pay.

18

There will be a fifty cent ($.50) per hour premium for performing hazardous waste removal as designated by the D. O. E.

For companies who require employees to use personal vehicles for grade checking, the grade checker will receive an additional $30 a day plus reasonable fuel reimbursement.

The CCO certified crane operator will be paid $1.00 per hour more than scale when he/she is in the equipment he/she is certified in.  The employer is not required to pay for his/her testing.

1801 -    Subsistence – Effective June 16, 2008 the following subsistence zone rates will become effective.  Free zones shall be established as follows:  A sixty mile radius from the city hall in Phoenix, Tucson, Flagstaff and Yuma.  These cities shall be referred to as "A" Cities.  Subsistence will be calculated as follows:

All work performed beyond a 60-mile radius from the "A" City from which he or she is properly referred shall be paid as follows per day worked:

| | |
|---|---|
| 0-60 miles - | None |
| 61 – 100 miles  - | $50.00 |
| 101 – 150 miles  - | $60.00 |
| 151 miles and over - | $70.00 |

It is understood and agreed that if any employee travels from his/her original subsistence zone and travels back to the original subsistence zone through a higher subsistence zone, then he/she shall be paid the highest zone pay through which he/she traveled.  [This calculation shall be by the shortest all weather road (maintained) to the center of the project or jobsite.]

1801.1 -  Workman's Residence – A bona fide local resident shall have a zone around his residence the same as an "A" city.  The man or woman shall not be considered a bona fide local resident unless he meets the residence requirements of a qualified Arizona voter in the county and precinct in which he claims residence.

1801.2 -  The Union and the AGC have agreed to work together with our respective international and national organizations to try to get this subsistence clause into the Department of Labor Davis-Bacon rates and specifications.

# EXHIBIT C

| | | |
|---|---|---|
| In the Matter of Arbitration<br>Between | ) | FMCS NO. 10-50375 |
| | ) | |
| INTERNATIONAL UNION OF<br>OPERATING ENGINEERS LOCAL 428 | )<br>)<br>) | |
| and | )<br>) | ARBITRATOR'S OPINION |
| ASSOCIATED GENERAL<br>CONTRACTORS OF  AMERICA INC. | )<br>)<br>)<br>) | |
| _____ | ) | |

ARBITRATOR:                                    GEORGE E. MARSHALL, JR.

HEARING HELD:

February 16, 2010
Phoenix, Arizona

APPEARANCES:

    UNION:                                      MICHAEL J. KEENAN, ESQ.
Ward, Keenan & Barrett, P.C.
3838 N. Central, Suite 1720
Phoenix, AZ 85012

    CONTRACTORS:                          KEITH F. OVERHOLT, ESQ.
Jennings, Strouss & Salmon, PLC
One East Washington Street, #1900
Phoenix, AZ 85004-2554

## BACKGROUND

The facts in this case are essentially undisputed and the parties have submitted a number of stipulated facts:

1.    Operating Engineers Local 428 ("the Union") negotiated an agreement with Associated General Contractors ("AGC") covering the period June 23, 2005 to May 31, 2008.  The following contractors assigned their bargaining rights to the AGC and are party to the AGC Agreement (JX1): Pulice Construction Company, Inc.; Royden Construction Co.; Ames Construction, Inc.; Kiewit Western Company; Klondyke, Inc.; Marco Crane & Rigging Company; Southwest Industrial Rigging Company; Crane Rental Service Company; and Bragg Crane.

2.     The Union entered into a collective bargaining agreement (JX2) covering the period June 1, 2005 through May 31, 2008 with the following contractors; Markham Construction, Wheeler Construction, C-70, Nesbit Contracting Company, and Ironhorse Construction ("The Wheeler Group").

3.     The Union entered into a collective bargaining agreement (JX3) with the AGC covering the period June 1 2008 through May 31, 2011 on behalf of the following contractors who assigned their bargaining rights to AGC; Pulice Construction Company, Inc; Royden Construction Co.; Ames Construction, Inc.; Kiewit Western Company; Klondyke, Inc.; Marco Crane & Rigging Company; Southwest Industrial Rigging Company; Crane Rental Service Company; and Bragg Crane.

4.     Joint Exhibit 3 contains the following provision:

   104.1   Other Contractor's Rates.  In no event shall the Contractor be required to pay higher rates of wages, or be subject to more unfavorable working rules than those established by the Union for any other Contractor engaged in similar work in Arizona. However, the Crane Rental Addendum and project agreements shall not be considered as doing "similar work", and accordingly, the first sentence in this paragraph shall not apply to such agreements, provided Contractor has the opportunity to sign all such agreements.  No project agreement with more favorable conditions than those specified in this agreement will be given to any contractor doing similar work without first being given written notice to the respective employer association at least 60 days prior to the bid date of the project in question.

5.     Marco Crane & Rigging Company, Southwest Industrial Rigging Company, Crane Rental Service Company, and Bragg Crane are crane rental companies which are covered under the Crane Rental Addendum to the Agreement

6.     During the Summer of 2008, the Union entered into negotiations with the Wheeler Group who were party to the agreement described in paragraph 2. That agreement is similar to, but not identical to the AGC Agreement.

7.     The Union and the Wheeler Group, or its individual contractors, were unable to reach an agreement before the contract expired on May 31, 2008.  The Union has entered into a series of one month extensions of Joint Exhibit 2 covering the months of June, 2009 through the present while negotiations continue.  While the extensions are in effect, each of the contractors in the Wheeler Group have paid wage rates and benefit

levels which were in effect as of June 1, 2007 as specified in Joint Exhibit 2.

8.  The AGC Group paid the negotiated increases in wages and benefits beginning on June 16, 2008, the effective date of the Agreement.

9.  By letter dated May 29, 2009, Pulice notified the Union that it was "delaying all wage adjustments scheduled to take effect June 1, 2009, until we can collectively re-evaluate the present market conditions".

10. By letter dated June 3, 2009, AGC President David Martin notified the Union that the contractors who had assigned their bargaining rights to AGC were invoking Article 104.1 "Other Contractors' Rates" and that the contractors would not pay the wage and benefit increases scheduled to take effect on June 1, 2009.

11. The AGC contractors, including the crane rental companies, did not implement the wage and benefit increases due June 1, 2009.

12. On June 18, 2009, the Union filed a grievance against the AGC contractors contending that they violated the contract by failing to pay the wage and benefit increases due on June 1, 2009.

When the parties were unable to resolve the grievance pursuant to Article 9 of the collective bargaining agreement, the dispute was moved to arbitration (JX5, Letter of August 19, 2009).

## ISSUES

The parties were unable to agree upon a single submission agreement and have submitted individual statement of the issues, but have agreed the arbitrator can formulate the issues for determination.

<u>Contractors' Issues</u>

1.  Whether the Union violated Section 104.1 ("Favored Nations") of the Collective Bargaining Agreement by entering into other collective bargaining agreements with contractors engaged in similar work in the State of Arizona that provided for wages and fringe benefit contributions substantially below the level required in the industry agreement between the parties.

<u>Union Issues</u>

3

1.      Did the Contractors violate the collective bargaining agreement on and after June 1, 2008 when they failed to pay wage and benefit increases which were to become effective June 1, 2008?

If so, what is the appropriate remedy?

The arbitrator having reviewed the twelve (12) Stipulated Facts submitted by the parties and having heard and reviewed the evidence adduced at the hearing has formulated the following issues:

1.      Whether the contractors of the Associated General Contractors of America, Inc., Arizona Chapter did violate the collective bargaining agreement on and after June 1, 2009, when they failed to pay the wage and benefit increases due to become effective June 1, 2009?

2.      If so, what is the appropriate remedy?

## POSITION OF THE PARTIES

Contractors' Position

The Contractors contend this is a simple case.  The facts are not in dispute and there was no conflicting testimony at the hearing.  The Associated General Contractors multi-employer bargaining unit ("AGC") have successfully negotiated the industry-wide collective bargaining ("Industry Agreement") for over fifty years.  For the last fifteen years, each of those agreements has provided the Union will not enter into any agreement covering similar work with any other contractor if that agreement has more favorable terms and conditions than the Industry Agreement ("Favored Nations").

The Union has entered into 22 consecutive, one month long collective bargaining agreements with four general contractors that provide for more favorable wages and benefit contribution rates frozen at levels specified in the Industry Agreement as of June 1, 2007.  The current Industry Agreement calls for wages and fringe benefit rates that are more than 10% (Ten Percent) higher.  All of the contractors signatory to the Industry Agreement are entitled to the benefit of their bargain with the Union.

The grievance should be denied.

Union Position

The Union, for nearly two decades has negotiated two principal agreements with construction contractors.  The Associated General Contractors ("AGC") has bargained on behalf of a group of heavy and highway contractors, who are involved primarily in highway and infrastructure construction and large industrial projects.  The second group, generally referred to as the "Wheeler Group" includes a number of contractors who are engaged primarily in residential and commercial projects.

The Union and the AGC were successful in negotiating a new three-year agreement in May, 2008.  The Wheeler Group, sensing a significant economic downturn, refused to accept the terms negotiated with the AGC, instead seeking substantially lower wages and benefits.  The Union has continued its negotiations with the Wheeler Group. During negotiations, the Union and the Wheeler Group contractors entered into an uninterrupted series of thirty-day contract extensions.

Mindful of the possibility the AGC contractors might seek to invoke the most favored nations clause, the Union's chief negotiator, Gary Teel, regularly communicated with AGC representatives to advise them of the status of the negotiations as well as the existence of contract extensions.  The AGC bargainers and the Union had an informal agreement the AGC would not seek to invoke the most favored nations clause so long as the Wheeler Group stayed out of the type of work typically performed by AGC contractors; highway work and other public works projects.

In the Spring of 2009, a Wheeler Group contractor, Markham Construction Company, bid on and was awarded a substantial construction project on Interstate 17. Thereafter, one of the AGC contractors, Pulice Construction Company, and David Martin, President of the AGC, notified the Union they were invoking  the most favored nations clause, and they would not be paying wage and benefit increases due to take effect on June 1, 2009.  The failure to pay the negotiated wage and benefit increases was applied on an across-the-board basis.

A group of employees represented by AGC known as the crane rental companies, invoked the most favored nations clause notwithstanding a specific exclusion for crane rental operations.  That provision specifically states crane rental operations are not "similar work" to the type of work performed by the construction employers.

The Union contends the grievance should be sustained for the following reasons:

1.     The AGC failed to file a timely grievance.  It was not privileged to unilaterally reduce wages and benefits on an across-the-board basis.

2.     AGC waived enforcement of the most favored nations clause on non-public of the type typically performed by employers in the Wheeler Group.  AGC representatives gave the Union assurances they would not invoke the clause on work historically done by Wheeler Group employers.

3.     AGC did not utilize the market recovery provisions of the agreement to seek adjustments in wages and benefits before the project was awarded to Markham.

4.     Enforcement of the most favored nations clause must be project specific, not across the board.

5.     The crane rental companies had no basis for invoking the most favored nations clause because their operations are specifically excluded under the clause.

## DISCUSSION AND CONCLUSIONS

It is interesting to note the Contractors argument the instant case is a simple case, with no disputed facts, and from their view of the case, unilateral action or self-help is the solution to what they perceive as a clear violation of the parties collective bargaining agreement.  To paraphrase a statement made by Umpire Harry Schulman in Ford Motor Co., 3 LA 779, 780-81 (1944) "when a violation of contract seems clear * * *" one may "resort to self-help rather than the grievance procedure.  That is an erroneous point of view.  In the first place, what appears to one party to be a clear violation may not seem so at all to the other party.  Neither party can be the final judge as to whether the contract has been violated.  The determination of that issue rests in collective negotiation through the grievance procedure.  But, in the second place, and more important, the grievance procedure is prescribed in the contract precisely because the parties anticipated that there would be claims of violations which would require adjustment.  That procedure is prescribed for all grievances, not merely for doubtful ones. Nothing in the contract even suggests the idea that only doubtful violations need be processed through the grievance procedure and that clear violations can be resisted through individual self-help.  The only difference between a 'clear' violation and a 'doubtful' one is that the former makes a clear grievance and the latter a doubtful one.  But both must be handled in the regular prescribed manner."

In the instant case, there is no stipulated fact or any evidence AGC, Pulice Construction, or any other of AGC's member companies filed a grievance alleging the Union had violated the favored nations clause of 104.1 of the collective bargaining agreement (JX3) between the parties.  Under Joint Exhibit 3, Article 9, a grievance is defined " to mean any dispute, controversy or disagreement as to the application in or interpretation of any of the terms and provisions set forth in this Agreement."  A review of the Agreement does not reveal any provision that precludes an employer from filing a grievance and no provision which would give management the privilege or right to invoke self-help for a perceived clear violation of the Agreement.  Rather than refusing and failing to pay the wage and benefit increases effective June 1, 2009 (self-help), the Contractors should have honored its bargain to pay the increases and invoked its contractual remedy by filing a grievance.  Just as AGC argues it is entitled to the benefit of its bargain with the Union, the Union is entitled to the benefit of its bargained for increases.

The AGC argues the Union has not offered any evidence to rebut six items delineated in AGC's post hearing brief, page 4, it contends is "dispositive and material evidence" the arbitrator must take as true.  The majority of the items delineated in the brief relate to the favored nations clause and tend to ignore some issues raised by Union testimony which challenge whether the Wheeler-Markham Group is doing "similar work" as the AGC contractors and whether the favored nations clause can be invoked across the

board when Markham Construction, without the knowledge of the Union or AGC but with the knowledge of Pulice Construction, an AGC member company, bid on a highway project for Interstate 17 and was the successful bidder on what could be considered a "project" agreement.

First, contrary to AGC's argument the Union has admitted the Wheeler-Markham Group is doing "similar, if not identical work as AGC contractors", testimonial evidence of Gary Teel in distinguishing between the Crane Rentals and AGC indicated "some of it is the same work" but not all. The Union argues AGC is primarily engaged in highway and infrastructure construction and large industrial projects while the Wheeler Group is involved primarily in residential and commercial projects. There is no dispute the Union kept AGC apprised of the negotiations with the Wheeler group and the granting of the one month extensions and discussions relative to the favored nations clause. There is, however, a dispute as to whether there was an informal agreement between AGC and the Union, AGC would not invoke the favored nations clause so long as the Wheeler Group stayed out of the work primarily handled by AGC. AGC and Pulice Construction invoked the favored nations clause and initiated its self-help remedy after Markham was awarded the highway project requesting to "collectively re-evaluate the present market conditions" and to establish a Market Recovery committee (JX5). By virtue of the timing of these notices from Pulice and AGC one could infer the existence of an informal agreement not to invoke the favored nations clause as well as infer AGC by its informal agreement intended a temporary modification of "similar work" during the extended negotiation period upon which the Union could rely. In other words, if the informal agreement existed, AGC knowingly delayed its right to invoke favored nations for "similar work" performed by Wheeler-Markham, i.e., residential and commercial private construction so long as they didn't get involved in highway or public construction. The timing of the aforementioned notices support such inferences, since there is no evidence the favored nations violation was invoked prior to the bid award to Markham.

Secondly, in reviewing the language of the favored nations clause and the authorities cited by the Union in its post hearing brief, the arbitrator is of the opinion invocation of the favored nations clause is limited in scope and can be applied only on a project specific basis. AGC cannot unilaterally change employees' wages and benefits on an across the board basis which is clearly a breach of the Agreement.

In addition, the clause in question discusses the fact the "Crane Rental Addendum and project agreements shall not be considered as doing 'similar work'." Although AGC argues the favored nations clause applies to the crane rental signatories through its proviso to be bound and comply with all provisions of the industry agreement, the plain language of the clause and the evidence in this record establish Wheeler-Markham contractors are not in competition with crane rental companies signatory to the Crane Rental Addendum. The crane rental companies had no legitimate basis for unilaterally reducing employees' wages and benefits. The AGC argument the historic one dollar wage differential soon will become a three or four dollar differential and the industry's economic model for crane rental companies will collapse is speculative a t best and is not based upon fact or evidence.

In conclusion, for all of the reasons set forth above, the grievance is sustained. Associated General Contractors of America, Inc., Arizona Chapter, did violate the collective bargaining agreement on and after June 1, 2009, when they failed to pay the wage and benefit increases due to become effective June 1, 2009.  The AGC and its member Companies, including crane rental companies, are ordered to pay the wage and benefit increases due June 1, 2009 and June 1, 2010, retroactively, as specified in the current collective bargaining agreement JX3).  Payment of all wages and benefits are to be paid within thirty (30) days after receipt of this opinion and accompanying award. The arbitrator will retain jurisdiction to assist the parties with the implementation of the award upon the written request of either party.

July 9, 2010
Santa Monica, California

GEORGE E. MARSHALL, JR.

8

In the Matter of Arbitration    )        FMCS NO. 10-50375
Between                        )
                              )

INTERNATIONAL UNION OF    )
OPERATING ENGINEERS LOCAL 428  )
                              )

and                            )        ARBITRATOR'S AWARD
                              )

ASSOCIATED GENERAL        )
CONTRACTORS OF  AMERICA INC.   )
                              )
                              )
_____)

        The undersigned arbitrator, having been selected by the parties from a list of arbitrators supplied by the Federal Mediation and Conciliation Service, in accordance with their Articles of Agreement effective June 23, 2005 to May 31, 2008, and having read the documentary evidence and other proofs of the parties, and having reviewed, analyzed, and evaluated the evidence, proofs and written argument of the parties, hereby finds, decides, and awards as follows:

1.      The contractors, member companies of the Associated General Contractors of America, Inc., Arizona Chapter did violate the collective bargaining agreement on and after June 1, 2009, when they failed to pay the wage and benefit increases due to become effective June 1, 2009.

2.      The appropriate remedy is for AGC and its member companies, including crane rental companies, to pay, retroactively, the wage and benefit increases due June 1, 2009 and June 1, 2010 as specified in the current collective bargaining agreement (JX3) for the reasons set forth in the opinion accompanying this award.

3       The determination and calculation of the monies due and payable pursuant to this award is remanded to the parties.  Payment of all wages and benefits due and payable pursuant to this award is ordered to be paid by AGC and its member companies no later than thirty (30) days following receipt of this award and opinion.

5.      The arbitrator will retain jurisdiction to assist the parties with the implementation of the award, in the event of a disagreement or dispute relative to the amounts due and payable, upon the written request of either party.

                  Written request for the assistance of the arbitrator should be made no later than sixty (60) days following the date of the award.

//
//
July 9, 2010
Santa Monica, California

GEORGE E. MARSHALL, JR.